## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**LARISSA MARIE REID**                                        **CIVIL ACTION**

**VERSUS**

**COMMISSIONER OF THE SOCIAL**                    **NO. 19-00742-BAJ-SDJ**
**SECURITY ADMINISTRATION**

## ORDER

Plaintiff Larissa Marie Reid seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) of the Social Security Act. (Doc. 1). Having found all the procedural prerequisites met (Tr. 1–3), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").

For the reasons provided herein, the Court **ORDERS** that the decision of the Commissioner be **VACATED**, and Plaintiff's appeal be **REMANDED** for further administrative proceedings consistent with this opinion.

## I.   PROCEDURAL HISTORY

Plaintiff began receiving Supplemental Security Income Benefits[1] as a child on

---

[1] *See* 20 C.F.R. § 416.110 ("The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are . . . disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level.").

January 1, 2004,[2] and those benefits continued throughout her childhood. (Tr. 17, 50).

After she turned 18, however, the Commissioner redetermined Plaintiff's eligibility

for benefits under the "rules for adults who file new applications,"

20 C.F.R. § 416.987(b). (Tr. 234, 308) (born Oct. 6, 1996; reached her eighteenth

birthday on Oct. 6, 2014). The redetermination found Plaintiff's "allegations of

seizures and autism" were not disabling as of May 7, 2015. (Tr. 17, 48, 52). Plaintiff

appealed the unfavorable redetermination (Tr. 52, 55–57, 69–71, 72–75) until her

claim was eventually denied by an Administrative Law Judge ("ALJ"). The ALJ held

a 15-minute administrative hearing (Tr. 41–47) before issuing an unfavorable

decision on Plaintiff's case on July 27, 2018. (Tr. 17–27). Plaintiff's request for review

of the ALJ's decision was denied by the Appeals Council on March 19, 2019. (Tr. 1–

3). The ALJ's decision rested as the Commissioner's final decision when the Appeals

Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry of

whether there is substantial evidence to support the findings of the Commissioner

and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

Substantial evidence "means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation

omitted). Substantial evidence will not be found, however, when "there is a

---

[2] The record does not clearly indicate the medical impairments on which Plaintiff's childhood benefits were based.

2

conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).

Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence or try the case de novo. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."). If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). But if the Commissioner fails to apply the correct legal standards or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden is on the claimant throughout the first four steps to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show that his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). At

step three, the ALJ must conclude that the claimant is disabled if he proves that his or her impairments meet or medically equal one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. § 416.920(d) (same); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving that he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education, and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here—after only a 15-minute hearing, in which Plaintiff was not represented by counsel—the ALJ made the following determinations, relying heavily on Plaintiff's brief testimony:

> **Step 1:** Plaintiff turned 18 years old on October 6, 2014[3] and while she was eligible for supplemental security income benefits as a child, "she was found no longer disabled as of May 7, 2015, based on a redetermination of disability under the rules for adults . . . ."
>
> **Step 2:** Plaintiff suffered from the following severe impairments during the relevant period[4]—seizure disorder, autism spectrum disorder, social

---

[3] The ALJ incorrectly states that Plaintiff turned eighteen years old on October 5, 2014. (Tr. 18). However, Plaintiff celebrated her eighteenth birthday on October 6, 2014. (Tr. 234, 308).

[4] The relevant period of disability is between May 7, 2015 (when Plaintiff's disability was found to have ceased), and July 27, 2018 (the date of the ALJ's unfavorable decision).

anxiety disorder and specific learning disorder.

**Step 3:** Plaintiff did not meet or medically equal any listed impairment, including Listing 11.02 (seizures), Listing 12.02 (neurocognitive disorders), Listing 12.06 (anxiety disorders), Listing 12.10 (autism spectrum disorder), and Listing 12.11 (specific learning disorder).

As for the severity of Plaintiff's mental impairments, the ALJ assessed the following limitations under Listing 12.00's Paragraph B[5] criteria: no limitation in understanding, remembering, and applying information; no limitation in interacting with others; a moderate limitation in concentrating, persisting, and maintaining pace; and a moderate limitation in adapting and managing oneself.

**RFC:** Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to understanding, remembering, and carrying out no more than semi-skilled work activity. She cannot perform a job that requires multi-tasking. She can work at a low-stress job that requires only occasional decision making and occasional changes in the work setting. She should avoid even moderate exposure to hazards, such as dangerous machinery or unprotected heights. Finally, she cannot climb ladders, ropes, or scaffolds.

**Step 4:** Plaintiff had no past relevant work.

**Step 5:** Considering Plaintiff's age (younger individual), education (high school), work experience (no past relevant work), and RFC, a significant number of jobs existed in the national economy that Plaintiff could perform.

---

[5] The Paragraph B of each mental disorder categorized within Listing 12.00 (except 12.05) "provides the functional criteria used to assess how a claimant's mental disorder(s) limits his or her functioning:

> These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to function independently, appropriately, effectively, and on a sustained basis. . . .

Listing 12.00A(2)(b), 20 C.F.R. pt. 404, subpt. P, app'x 1.

(Tr. 18–26).

## IV.  DISCUSSION

In support of her appeal, Plaintiff raises several, albeit somewhat disorganized, arguments. (Doc. 13). But ultimately, she argues that substantial evidence does not support the RFC where the ALJ ignored limitations supported by the evidence and failed to "fully and fairly" develop the record by conducting only a 15-minute hearing, during which Plaintiff was unrepresented. The Court agrees.

As discussed below, the starting point must be the conclusory and perfunctory hearing in which the ALJ elicited a mere two and a half pages of testimony from Plaintiff.[6] (Tr. 43–45). He then used that superficial hearing testimony to craft an

---

[6] Plaintiff additionally argues that the ALJ "failed to obtain a valid waiver of representation" at the hearing and that this "invalid waiver prejudiced Reid because the ALJ failed to fulfill his duty to develop the record." (R. Doc. 13 at 9–13). Although Plaintiff received several written notices of her right to counsel and postponements of her hearing in order to obtain counsel (Tr. 76–89, 92–110, 114, 115–33, 137), the ALJ made no effort to explain the right to counsel orally and in person or to otherwise ensure that Plaintiff understood that right from the prior written notices. (Tr. 37, 41). He simply told Plaintiff if she did not have counsel at the next scheduled hearing, "we're going" no matter what. (Tr. 37).

Despite the Commissioner's arguments to the contrary, its own hearing manual requires an ALJ to "advise the claimant of the right to representation" *at the hearing*. HALLEX § I-2-6-52, 1993 WL 643033 (last updated Nov. 20, 2018). And this requirement is consistent with mandates from the Fifth Circuit. *See also Norden v. Barnhart*, 77 F. App'x 221, 223 (5th Cir. 2003) (waiver was knowing and intelligent; "Norden received written notices of his right to representation prior to the hearing. At the hearing, the ALJ again informed Norden of his right to representation."); *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) ("We conclude that the numerous written notices Castillo received—*along with the ALJ's reminder to Castillo at the hearing of her right to counsel*—sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation.") (emphasis added).

Beyond that, the requirement for some form of oral notice by the ALJ seems especially prudent in a case like Plaintiff's, where the ALJ assessed learning deficits (Tr. 18) and was addressing a claimant of low-average intelligence (Tr. 386, 387). *See Oringderff v. Astrue*, 2010 WL 3782188, at *6 (S.D. Tex. Sept. 10, 2010) ("In a number of cases, courts have found that a claimant did not validly waive the right to counsel when written notification of her

6

RFC that failed to incorporate limitations supported by the record. Moreover, the ALJ seems to have cherry-picked or otherwise mischaracterized evidence to support his findings. *See Schofield v. Saul*, 950 F.3d 315, 321 (5th Cir. 2020) ("the ALJ is an examiner charged with developing arguments both for and against granting benefits.").

### A. Plaintiff Did Not Receive a Full and Fair Hearing

At the administrative level, a disability claimant may seek review before an ALJ of an unfavorable decision at the lower level. *See* 20 C.F.R. § 416.1429 ("If you are dissatisfied with" an unfavorable decision made at a lower level "you may request a hearing" before an ALJ.); 20 C.F.R. § 416.1430(a)(1)–(4) (identifying the lower-level decisions subject to ALJ review). The ALJ will conduct an administrative hearing, 20 C.F.R. § 416.1444, before issuing a written decision, 20 C.F.R. § 416.1453(a).

Because the results of administrative hearings before ALJs "gravely affect the claimants, the hearings must be conducted in such a manner as to assure their objective: the determination of a matter of moment on the basis of a record adequately developed." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The function of the ALJ "is not merely to sit and listen." *Id.* Instead, the ALJ has a duty to "fully and

---

rights was not followed up by a comprehensive oral notification . . . . Here, [unlike *Castillo*], [] there is evidence that the claimant's ability to understand the written notices may have been impaired [and] the ALJ took no steps to ascertain her understanding."). But ultimately, it is not necessary to decide whether Plaintiff validly waived her right to representation, because the Court finds that remand is warranted based on the prejudice resulting from the ALJ's failure to conduct a full and fair hearing. *Thomas v. Schweiker*, 573 F. Supp. 327, 330 (W.D. Tex. 1983) ("Whether or not the right to representation has been waived by a Social Security claimant, the record must still disclose that there has been a full and fair hearing."); *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997) ("The ALJ has this same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid.").

fairly" develop the facts relevant to the claim for disability. *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). If the ALJ fails to fulfill this duty, "he does not have before him sufficient facts on which to make an informed decision and consequently the decision is not supported by substantial evidence." *James v. Bowen*, 793 F.2d 702, 704 (5th Cir. 1986); *see also Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) ("When a full and fair record is lacking, the ALJ will not have sufficient facts on which to make an informed decision and thus his decision will not be supported by substantial evidence.").

But where, as here, a claimant appears at the hearing unrepresented, "[t]he ALJ's basic obligation to develop a full and fair record rises to a special duty"—one that "requires the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane*, 731 F.2d at 1219–20. With that in mind, "the [Fifth Circuit] often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information necessary to make a disability determination." *Sun*, 793 F.3d at 509; *see also Thomas v. Schweiker*, 573 F. Supp. 327, 330 (W.D. Tex. 1983) (Courts "have found good cause to remand cases in which the ALJ failed to diligently explore all relevant facts, especially when the claimant was uneducated, appeared without representation, and an adequate showing was made that the absence of counsel prejudiced the claimant.").

Here, the hearing lasted a mere 15 minutes and produced only a 7-page transcript (Tr. 41–47), of which only two and half pages include testimony from Plaintiff (Tr. 43–45), who appeared without the benefit of counsel. The sheer brevity

8

of the hearing (Tr. 41–47), and the minimal amount of time devoted to Plaintiff's testimony (Tr. 43–45) raises an inference that the ALJ failed to conduct a full and fair hearing. *See Rials v. Califano*, 520 F. Supp. 786, 789 (E.D. Tex. 1981) ("[T]he hearings lasted only twenty minutes. This, in and of itself, raises an inference that there was not a full and fair hearing."); *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (remanding claim where the hearing lasted only ten minutes and was fully transcribed in eleven pages); *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983) ("The hearing was brief. It lasted a mere 25 minutes, and was fully transcribed in approximately 11 pages. In addition Lashley possessed limited intelligence, was inarticulate, and appeared to be easily confused."); *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (The hearing lasted 10 minutes. "It matters that Ms. Thompson was not asked enough questions or the right questions at the hearing because her answers were needed by the ALJ as evidence to support his determination of her credibility."); *see also Ass'n of Admin. L. Judges v. Colvin*, 777 F.3d 402, 405 (7th Cir. 2015) (in a case brought by ALJs under the Administrative Procedures Act, the 7th Circuit stated: "Suppose . . . the Social Security Administration ordered that disability hearings were to last no more than 15 minutes. The quality of justice meted out by the administrative law judges would be dangerously diminished.").

But the "length or brevity" of the hearing, alone, is not enough. *Bancolita v. Berryhill*, 312 F. Supp. 3d 737, 742 (N.D. Ill. 2018). Instead, the transcript itself convinces the Court that Plaintiff did not receive a full and fair hearing—especially

in the absence of counsel—and that this failure resulted in prejudice which warrants remand.

### B. The ALJ's Error Resulted in Prejudice and Warrants Remand

To begin, the ALJ's questioning of Plaintiff is best described as perfunctory, cursory, and not designed to explore the complexities of Plaintiff's impairments. This is evident in the simplistic questions the ALJ asked and his failure to ask any meaningful follow-up questions in response to Plaintiff's testimony. Consider the following exchange regarding Plaintiff's mental health:

ALJ: So, any mental health issues?

CLMT: Depression and anxiety.

ALJ: [T]hose are simply diagnoses. Do they interfere with you doing anything?

CLMT: Well, my anxiety sometimes gets in the way of everything.

ALJ: Okay.

(Tr. 45).

Shockingly, no additional or follow-up questions were explored by the ALJ. This was the extent of Plaintiff's testimony regarding the limitations posed by her anxiety and depression.

To be sure, this testimony is from a young woman of low average intelligence (Tr. 387), who suffered from a language delay (Tr. 319, 387), and has been described as a "poor historian" (Tr. 433), "shy," and "socially reticent" (Tr. 385). Despite this, as well as the support for these mental impairments found in the record, there was no follow-up by the ALJ, in abdication of his fundamental duties as a hearing officer. He

10

made absolutely no effort to probe further or develop the facts both for and against Plaintiff's claim for disability. This ultimately resulted in prejudice.

First, the ALJ failed to find that either Plaintiff's depression or general anxiety disorder were severe impairments, despite the ample record evidence related to these conditions. (Tr. 532) (diagnosis: major depression with anxiety); (Tr. 491, 557) (diagnosis: autism spectrum disorder, anxiety disorder NOS, panic attack); (Tr. 555) (diagnosis: major depression, autism); (Tr. 554, 556, 558) (presented as anxious and fidgety); (Tr. 548) ("she still seems anxious due to her autism but denies"); (Tr. 558) (reported anxious mood); (Tr. 507, 538, 597, 602) (presented at emergency room in August of 2016 for depression and suicidal ideation); (Tr. 531–36, 554) (hospitalized for 5 days in November 2017 following suicidal ideation/attempt because of depression and anxiety associated with stress from school); (Tr. 554) (feeling down, better off dead most days); (Tr. 556) (anxiety because of school, tired, trouble concentrating); (Tr. 558) (anxious and scared about starting school again, not sleeping, tired every day).

While it would seem the ALJ summarily brushed aside this evidence and failed to assess her depression and generalized anxiety disorder[7] as severe impairments, the Court cannot be sure. This is because the ALJ offered no explanation for his severity finding—or lack, therefore—at Step 2. (Tr. 18). Without any explanation from the ALJ, "it is impossible for the court to determine whether the ALJ applied

---

[7] The Court notes that Plaintiff has only argued that the ALJ erred by not finding her generalized anxiety disorder NOS severe at step 2. However, both impairments are supported by the record and both should be considered on remand.

the correct legal standard or whether the finding is supported by substantial evidence. A more thorough explanation of the basis for [the ALJ's Step 2] finding is necessary. Accordingly, reversal and remand are appropriate." *Harmon v. U.S. Comm'r,* 2015 WL 9226138, at *7 (W.D. La. Nov. 17, 2015); *see also Anthony v. Sullivan,* 954 F.2d 289, 294 n.5 (5th Cir. 1992) ("a claimant need only prove that her impairment is something more than a slight abnormality" at step 2; the burden is "*de minimis*").

Also significant, the ALJ relied largely on the following testimony in finding Plaintiff had "no limitation" in her ability to interact with others (Tr. 19):

ALJ: Okay. Any problems getting along with people?

CLMT: No sir.

(Tr. 45).

The ALJ did not inquire further, which is remarkable under the circumstances of this case.

To begin, the record is replete with evidence demonstrating that Plaintiff has "serious problem[s]" "cooperat[ing]" with others, "making and keeping friends," and overall "has a hard time in social settings." (Tr. 202); (Tr. 222) (referred to psychotherapy and social worker for "social skills development"); (Tr. 248, 249) (poor social skills); (Tr. 204, 216, 227, 250, 251, 317, 319, 385, 387) (same); (Tr. 549, 555) (diagnosed with autism, "as evidenced by failure to develop appropriate interpersonal relationships, and overreacting to change"). What's more, this evidence overwhelmingly comes from those who know Plaintiff or have observed her behavior in social settings over a long period of time. (Tr. 202, 204, 210, 222, 227, 248, 249,

12

250, 251, 317, 385, 549, 555) (issues with social interactions reported by teachers, doctors, and mother). Indeed, consistent with her testimony, Plaintiff has previously denied reports of behavioral and social issues. (Tr. 385) (Dr. Durbin noted that Plaintiff reported no behavioral issues, which was contradicted by school records from 2015, indicating she "has a hard time in social setting. Becomes frustrated . . . .").

Given this record evidence, it was error for the ALJ not to probe further into Plaintiff's limitations in social interactions. The Court therefore cannot find substantial evidence supporting the ALJ's decision, especially considering that he ignored the relevant and probative evidence cited above and that he chose instead to rely on Plaintiff's incomplete testimony, thereby failing to incorporate these limitations into the RFC. *See* SSR 83-14 ("Depending on the nature and extent of a person's mental impairment which does not meet or equal the criteria in the Listing of Impairments, relatively broad or narrow types of work may be precluded (e.g., . . . dealing frequently with members of the public--a particular type of work at any level of complexity).")

Consistent with the evidence cited above, the record also contained 3 medical source statements from both examining and non-examining psychological consultants, each of whom assessed similar limitations in social interaction. (Tr. 384–88, 407–09, 465–67). Specifically, all three psychologists assessed moderate to marked limitations in "social interaction" and "the ability to get along with others." (Tr. 387) (moderate limitations); (Tr. 408) (moderate limitations); (Tr. 466) (moderate to marked limitations); *see also* Listing 12.00F(2)(c) (moderate equates to fair);

13

Listing 12.00F(2)(d) (marked equates to serious). Based on these limitations, all 3 psychologists found that Plaintiff could only perform work requiring limited interaction with the public and co-workers, including jobs where she received only "gentle correction" from supervisors. (Tr. 387, 409, 467). All 3 opinions are consistent with the evidence cited above, yet the ALJ rejected each of them, along with the remaining evidence of record, in finding Plaintiff had no limitation in social interactions. Again, he chose to rely on her testimony. (Tr. 45).

An ALJ "may not simply ignore entire lines of contrary evidence, and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Davis v. Saul*, 446 F. Supp. 3d 406 (N.D. Ind. 2020). The Fifth Circuit has long cautioned against ALJ's who 'play doctor.' Indeed, this principle—"that an ALJ should not substitute his lay opinion for the medical opinion of experts"—is "especially profound in a case involving [] mental disability[ies]." *Salmond v. Berryhill*, 892 F.3d 812, 818 (5th Cir. 2018). Here, the ALJ rejected nearly the entire record, including "the medical opinions of treating[,] examining [and non-examining] doctors alike, without contradictory evidence from a medical expert of any kind" regarding Plaintiff's impairments in social interactions. *Salmond v. Berryhill*, 892 F.3d 812, 819 (5th Cir. 2018). The record therefore does not contain substantial evidence supporting the ALJ's finding that Plaintiff has no limitation in social interactions, and remand is warranted.

Beyond that, when asked during the hearing why she cannot work, Plaintiff testified that her autism prevents her from "multi-tasking." (Tr. 44). In denying her

14

disability claim, the ALJ explained: "At the hearing, she clarifies that the only reason she is unable to work is due to her inability to multi-task." (Tr. 19). The record clearly supports additional limitations resulting from Plaintiff's impairments—autism, anxiety, depression, learning disorder, social anxiety, and seizure disorder. (Tr. 384–88, 407–09, 465–67). The ALJ was not free to ignore the record evidence for the convenience of the superficial testimony elicited at the hearing.

Finally, throughout his decision, the ALJ consistently cites to Plaintiff's hearing testimony that "she was able to attend college on a full-time basis" as support for Plaintiff's ability to perform semi-skilled work and his ultimate finding that Plaintiff was no longer disabled. (Tr. 19, 24, 25). To be clear, the ALJ's terminology seems to assume that Plaintiff is attending a 4-year college. (ALJ's Decision, Tr. 20) (plaintiff "had a good Christmas and was planning on returning to school for the next *semester*.") (emphasis added); (Hearing, Tr. 43) ("[Y]ou're in college . . .What, first year, second year, what?). This is problematic for several reasons.

First, and perhaps most important, the ALJ mischaracterizes the record. *See Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) (ALJ cannot mischaracterize statements or documents to reach his conclusion). According to the administrative transcript, Plaintiff reported being "in school at a medical institute college in Baton Rouge for medical billing and coding." (Tr. 516). Later, Plaintiff reportedly told her therapist that she had completed 8 months of the program and needed 3 more months to obtain her certification. (Tr. 556); (Tr. 548) (certificate). Based on these summaries found in her medical records, the ALJ seemingly presumed Plaintiff was attending a

traditional 4-year college:

> ALJ: And, I believe the record says you're in college?
>
> CLMT: Yes, sir.
>
> ALJ: Okay. What, first year, second year, what?
>
> CLMT: First.
>
> ALJ: Oh. Okay. Are you attending full-time, part-time, what?
>
> CLMT: Full-time.

(Tr. 43).

Not only is this exchange confusing, because the record does not suggest that Plaintiff is attending a 4-year college, but if the ALJ in fact believed she were, his failure to probe further was a gross dereliction of duty. *See Schofield v. Saul*, 950 F.3d 315, 321 (5th Cir. 2020) ("[T]he ALJ is an examiner charged with developing arguments both for and against granting benefits.")

The record sufficiently establishes Plaintiff's "low average" intelligence (Tr. 387), participation in IEPs and receipt of accommodations throughout school (Tr. 181, 182, 189, 197–206, 224–27, 303–07, 315–34), learning deficits (224, 225, 319, 323), poor and sometimes failing grades (Tr. 197, 224, 225, 305), and the constant assistance and support she receives from her mother, with whom she still lives (Tr. 216, 244, 246, 251). But despite all this, the ALJ assumed that Plaintiff attends a 4-year college without any issues. He made no effort to question where she was attending college, the curriculum, her major, whether she was receiving educational support or accommodations, her grades, etc. This failure was prejudicial, as the ALJ cites Plaintiff's college attendance to discount her "low average intelligence" (Tr. 20,

16

387) and find her capable of performing semi-skilled work when medical source statements and prior RFCs assessed a limitation to unskilled work. (Tr. 64–65) (simple, unskilled work); (Tr. 467) (simple instructions involving two-steps); (Tr. 387) (ability to carry out "simple" instructions).

The ALJ's reliance on Plaintiff's 'college attendance' is likewise problematic because he ignored ample record evidence that attending school for medical billing and coding negatively impacted Plaintiff's mental health. In October of 2017, Plaintiff reported being anxious and nervous "all the time" because of school; she had trouble sleeping and concentrating; and she appeared anxious and fidgety. (Tr. 556). In November of 2017, she was hospitalized following a suicide attempt. (Tr. 531–36). Following her release, she reported feeling down and "better off dead" most days (Tr. 554); she appeared anxious and fidgety and explained that her recent suicidal ideation was due to depression and stress caused by school (Tr. 554). And although she reported feeling happier on December 28, 2017, her therapist noted Plaintiff "still seem[ed] anxious" despite her denials. (Tr. 548). And on January 12, 2018—the last treatment note found in the record—Plaintiff presented as fearful and anxious and was reportedly having anxiety about starting school again. (Tr. 558–59).

Despite this evidence, none of which was apparently considered by the ALJ, he made no meaningful inquiry into Plaintiff's current school (or college) program, including its impact on her mental health. *See Kane v. Heckler*, 731 F.2d 1216, 1218 (5th Cir. 1984) (But given "the medical reports and Kane's suggestion of pain, it was the duty of the ALJ to inquire further . . . . The duty does not exact a lengthy hearing

or protracted inquiry. It does exact a careful effort to make a complete record. Kane's testimony suggesting cumulative symptoms sufficient to be disabling was not to be merely disregarded or 'uh-huh'ed" during the 5 minute hearing."); *Montalvo v. Barnhart*, 239 F. Supp. 2d 130, 138 (D. Mass. 2003) ("[A] number of factors converged so as to make the administrative hearing a due process minefield: Plaintiff had a limited education, appeared pro se, needed a translator, testified to memory problems . . . . Despite these problems, the hearing lasted, at most, twenty-two minutes, spanning a mere eleven transcript pages. Most problematically, the ALJ was insufficiently forthcoming during the proceeding with respect to a fundamental element of the case, Plaintiff's residual functional capacity, as to enable Plaintiff to present his position fairly and adequately."); *Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 949 (E.D. Wis. 2003) ("Where, as here, the ALJ failed to adequately explore the claimant's allegations of pain, pain was a primary component of the claim, and the claimant was unrepresented by counsel, the Commissioner's position cannot be considered substantially justified." The court also noted that the hearing lasted a mere 20 minutes.); *Harris v. Barnhart*, 259 F. Supp. 2d 775, 779 (E.D. Wis. 2003) ("The Commissioner did not come close to meeting her burden in this case. The hearing was perfunctory, lasting just twenty-three minutes, and the ALJ made no meaningful inquiry into several key areas."); *Bancolita v. Berryhill*, 312 F. Supp. 3d 737, 741–42 (N.D. Ill. 2018) (remanding warranted "where hearing . . . was just sixteen minutes long. The transcript of the testimony at the hearing covered just eleven pages and fewer than five of those transcribe [the claimant's] testimony" and

18

the ALJ failed to ask about key issues).

## V.    CONCLUSION

As explained above, the ALJ's failure to conduct a full and fair hearing precludes any finding of substantial evidence. The conclusory testimony elicited at the hearing, and relied on by the ALJ, prejudiced Plaintiff and warrants remand.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner be **VACATED**, and Plaintiff's appeal be **REMANDED** for further administrative proceedings consistent with this opinion.

Baton Rouge, Louisiana, this 31st day of March, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

19